IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAE INTEGRATED, LLC and CAPITAL ASSET EXCHANGE AND TRADING, LLC, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | 1:21-CV-377-RP |
| MOOV TECHNOLOGIES INC. and NICHOLAS MEISSNER, | § § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendant Nicholas Meissner's ("Meissner") Motion to Dismiss for Failure to State a Claim Under FRCP 12(b)(6). (Dkt. 28). Plaintiffs CAE Integrated, LLC, and Capital Asset Exchange and Trading, LLC (collectively "CAE" or "Plaintiffs") filed a response, (Dkt. 38), and Meissner filed a reply, (Dkt. 44). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

**I. BACKGROUND**

This case concerns the market for used semiconductor manufacturing equipment. Semiconductor manufacturing relies on proprietary processes that make use of highly specialized equipment. Because of the degree of specialization, the resale market for this equipment is quite limited. (Compl., Dkt. 1, at 3–5). A used equipment market does exist, however, and is largely built around intermediaries. The market as a whole is opaque, and buyers and sellers often prefer to keep their identities concealed, turning to the intermediaries to conduct their sales. (*Id.*). CAE is one such intermediary, matching buyers and sellers to facilitate equipment sales. Its traders use its proprietary platform, relying on decades of experience compiling data on participants in the market. (*Id.* at 6).

1

CAE claims that it holds two types of trade secrets related to its business: (1) data about its clients and their equipment that is held in its database, and (2) the platform itself. (*Id.* at 9–12).

Defendant Moov Technologies, Inc. ("Moov") is a competitor of CAE's founded in 2017 by two former CAE traders. (*Id.* at 12). Defendant Meissner is currently employed by Moov. From 2008 to 2018 he worked as a trader at CAE. (*Id.* at 9). In 2012 and 2014 he signed confidentiality and nondisclosure agreements with CAE, agreeing not to disclose or duplicate the company's proprietary information. (*Id.*). During his tenure at CAE, he developed a wealth of knowledge about the industry and relationships with a number of customers. (*Id.*).

Meissner was fired by CAE in May 2018. In July that same year, Meissner entered into a confidential separation agreement ("Separation Agreement") with CAE, which brought back his equity stake and contained a release of liability. The release waived most claims by CAE against Meissner but reserved "any claims relating to or arising from [Meissner's] willful or wanton misconduct." (Separation Agreement, Dkt. 1–3, at 4). The Separation Agreement also contained a clause where Meissner represented that he had "returned to the Company all Company property in his possession, including . . . trade secret information . . . that Employee may maintain or have stored [on his] cloud storage accounts." *Id.* Following the expiration of his noncompete agreement, Meissner was hired by Moov in June 2019.

At issue in this action are thousands of CAE documents saved to Meissner's personal Google Drive account. During his time at CAE, Meissner's files were set to sync automatically to his personal Google Drive account, (*Id.* at 11), which he routinely used to transmit photographs and other large files for business purposes. Until 2016, Meissner had a MacBook laptop which he used for both personal and business matters. In 2016, CAE issued Meissner a different laptop to better integrate with CAE's information technology infrastructure. (*Id.* at 16). CAE requested its laptop back, and after initially relenting, he ultimately returned it to CAE. (*Id.*).

Moov began to experience rapid growth around 2019, and by 2020 had attracted significant investments. At that time, CAE engaged in an investigation of Meissner's laptop, which it had retained since 2016. CAE discovered that Meissner had been syncing its documents to his Google Drive and found thousands of files from his time at CAE saved to his personal cloud account. (*Id.* at 17). CAE claims these files constitute its proprietary information and trade secrets. The files include purchase orders and invoices for sales to customers, as well as information on contacts at those companies, their specific equipment needs, and pricing history. They also include photographs of equipment and information on various products. CAE claims that Meissner brought the information contained on the Google Drive to Moov when he began working there and used it to build Moov's customer base and compete with CAE in the market. (*Id.*).

CAE filed suit against Moov and Meissner on April 29, 2021. (Compl., Dkt. 1). It raised five claims: (1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (2) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code §§ 134A *et seq.*; (3) breach of contract under Texas and California common law against Meissner alone, in reference to the 2012 and 2014 nondisclosure agreements and 2018 separation agreement he signed with CAE; (4) fraud in the inducement under Texas Common Law against Meissner, alleging that he made misrepresentations regarding his possession of CAE files on his personal Google Drive account when he entered the 2014 and 2018 agreements; and (5) breach of fiduciary duty by Meissner alone for his conduct while an employee and member of CAE. (Compl., Dkt. 1, at 21–31).

On June 11, 2021, Meissner filed a motion to dismiss for failure to state a claim. (Mot. Dismiss, Dkt. 28). Defendant Moov answered the complaint but did not file a motion to dismiss. (Answer, Dkt. 29). On November 1, 2021, CAE filed a motion for a preliminary injunction. (Mot.

Prelim. Inj., Dkt. 100). The Court denied CAE's motion, which was affirmed on August 9, 2022, by the Fifth Circuit. (Dkt. 147). The Court deferred until a later date a decision on the pending motion to dismiss. This motion is now before the Court.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider

documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

Meissner's motion pertains to all of CAE's claims, including its fiduciary duty, breach of contract, federal trade secrets, state trade secrets, and fraudulent inducement claims.[1] (Mot. Dismiss, Dkt 28). Meissner's main contentions are not that CAE has failed to meet the requisite pleading standard,[2] but that CAE's common law claims are preempted by TUTSA and that all claims are barred by the Separation Agreement. (*Id.*) The Court will first address the preemption question before turning to whether the claims are barred.

### A. TUTSA Preemption

Meissner moves to dismiss CAE's claims for breach of fiduciary duty and fraudulent inducement on the grounds that they are preempted by TUTSA (Mot. Dismiss, Dkt. 28, at 6). TUTSA contains a broad preemption provision:

---

[1] Meissner moves to dismiss the claim in its entirety, but never specifically addresses CAE's breach of contract claim. Nonetheless, the Court will address Meissner's implied defense that the Separation Agreement waives any breach of contract claim.
[2] Meissner does challenge CAE's fraudulent inducement claim on the grounds that it fails to meet the heightened pleading standard under Rule 9(b). (Mot. Dismiss, Dkt. 28, at 9). Because the Court dismisses the claim on other grounds, it does not reach the question of whether CAE met Rule 9's heightened standard.

5

> (a) Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
> (b) This chapter does not affect:
>> (1) contractual remedies, whether or not based upon misappropriation of a trade secret;
>> (2) other civil remedies that are not based upon misappropriation of a trade secret; or
>> (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Tex. Civ. Prac. & Rem. Code § 134A.007.

The parties dispute whether CAE's claims of fraudulent inducement and breach of fiduciary duty are "based upon misappropriation of a trade secret." Meissner argues that TUTSA should preempt CAE's claims because they are based on the same underlying facts as the trade secrets claim. (Mot. Dismiss, Dkt. 28, at 6). CAE argues that its claims are not strictly based on trade secrets and therefore not preempted by TUTSA. (Pls.' Resp, Dkt. 38, at 17–19).

In an unpublished 2019 opinion, this Court addressed the very issue of whether TUTSA should preempt a breach of fiduciary duty claim. *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2018 WL 315753, at *3–*4 (W.D. Tex. Jan. 15, 2018). In *Embarcadero*, after reviewing state court decisions on the matter, the Court held that "TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information." *Id.* at *3. Under this reasoning, the Court ruled that TUTSA preempted the plaintiffs' breach of fiduciary duty claim. *Id.* The Court's holding in *Embarcadero* suggests that, in the instant case, CAE's breach of fiduciary duty claim should likewise be dismissed.

While *Embarcadero* did not address any fraudulent inducement claims, the holding still suggests the claim should be preempted. The relevant inquiry under *Embarcadero* and Texas caselaw is whether the fraudulent inducement claim shares the same facts as the trade secrets misappropriation claim. *See Embarcadero* 2018 WL 315753, at *4 ("Because Plaintiffs have not pleaded any facts unrelated to misappropriation of confidential information to support their claim for breach of fiduciary duty, the claim is preempted by TUTSA."); *Title Source, Inc. v. HouseCanary,*

6

*Inc.*, 612 S.W.3d 517, 533 (Tex. App. 2020), review denied (June 17, 2022) (finding that false inducement claims were preempted when they had the same "foundation" as the misappropriation claims); *MedioStream, Inc. v. Microsoft Corp.*, 749 F. Supp. 2d 507, 515 (E.D. Tex. 2010) (denying preemption because the facts did not revolve around the same nucleus). Both the fiduciary duty and fraudulent inducement claims revolve around the fact that Meissner uploaded confidential information to his personal cloud account. Without the improper acquisition of trade secrets, CAE does not allege a viable claim for fraudulent inducement. (Compl, Dkt. 1, at 30). When the Court has held that misrepresentation was not preempted, it was because the conduct was unrelated to the use of trade secrets. *See ScaleFactor, Inc.* 394 F. Supp. at 686 (holding that because the plaintiff's claim was based on misrepresentation, not taking confidential information, it was not preempted). Here, the wrongful conduct in each of the claims is that Meissner misappropriated trade secrets, and should thus be preempted under *Embarcadero*.

In response, CAE urges the court to reconsider *Embarcadero*. (Pls.' Resp., Dkt. 38, at 17–19). CAE's main argument appears to be that *Embarcadero* relied on cases outside of Texas and is inconsistent with the text of TUTSA, but these arguments are unavailing. The Court finds no reason to overturn its earlier decision in *Embarcadero*. As the opinion stated, "[t]he Court is by no means the first to come to this conclusion." *Embarcadero*, 2018 WL 315753, at *3. At least one state appellate court decision had held similarly. *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App. 2017—Corpus Christi, no pet.). It was reaffirmed by the Court in 2019 and has since been cited approvingly by several other cases as well. *See ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680 (W.D. Tex. 2019); *F. Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*, No. CV H-20-3768, 2022 WL 1103078 (S.D. Tex. Apr. 13, 2022); *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311 (E.D. Tex. 2019). Indeed, *Embarcadero* itself was based off another decision from this Court. *Embarcadero*, 2018 WL 315753, at *3 (citing *360 Mortgage Group, LLC v.*

*Homebridge Financial Servs., Inc.*, No. A-14-CA-847-SS, 2016 WL 900577, at *8 (W.D. Tex. March 2, 2016)). Before and after it was decided, several Texas courts have agreed with the holding in *Embarcadero*.

Nor is the Court willing to overturn *Embarcadero* because it cited cases from outside the state. The case relied on multiple out-of-state decisions from other district and appellate courts because those courts were interpreting the same uniform act. *Id.* at *3. As the Court noted, preemption by TUTSA has been referred to by legal scholars in the field as the "majority approach." *Id.* (citing Richard F. Dole, Jr., *Preemption of Other State Law by the Uniform Trade Secrets Act*, 17 SMU Sci. & Tech. L. Rev. 95, 109 (2014)). Moreover, TUTSA was enacted "to make uniform the law" among enacting states, so the decisions of other state courts are relevant to achieving this goal. Tex. Civ. Prac. & Rem. Code § 134A.008; *Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at *4 (Tex. App.—Dallas Dec. 14, 2020, no pet.).

CAE relies instead on a case from the Southern District of Texas, decided shortly before *Embarcadero*. (Pls.' Resp. Dkt 38, at 17) (citing *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 826 (S.D. Tex. 2017)). The discussion in that case contravenes CAE's position. While the *AMID* court held that plaintiffs could plead alternative civil remedies, it emphasized that the "focus is on whether the facts relied on to support the unfair-competition claim differ from those supporting the TUTSA claim." *Amid*, 241 F. Supp. at 826 (citing *Secure Energy, Inc. v. Coal Synthetics, LLC*, Civ. No. 4:08-cv-1719, 2010 WL 1691454, at *3 (E.D. Mo. Apr. 27, 2010)). As discussed in the next section, CAE relies on the same fundamental facts for its TUTSA, fiduciary duty, and false inducement claims. The Court's holding in *Embarcadero*—that TUTSA preempts civil remedies based on the same conduct—applies to this case.

2. Misappropriation of Trade Secrets

CAE also argues that *Embarcadero* does not apply to its civil claims because they are not strictly trade secrets. According to CAE, TUTSA only preempts claims relating to "misappropriation of trade secrets," while its breach of fiduciary duty and false inducement claims relate to release of confidential information. (Pls. Resp., Dkt. 38, at 13 (citing Tex. Civ. Prac. & Rem. Code § 134A.007(b))). In short, CAE contends that if the Court determines that Meissner's actions were not "misappropriation," then they should not be preempted by TUTSA.

First, this argument does not circumvent the holding in *Embarcadero*. In that case, the Court addressed whether civil claims besides trade secrets could still be preempted by TUTSA. 2018 WL 315753, at *4. The Court held that they were preempted. *Id*. In addition, CAE's logic directly conflicts with the definitions provided by the Act. TUTSA defines "improper means," the necessary element for misappropriation, as including "breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery." Tex. Civ. Prac. & Rem. Code § 134A.002(2). CAE alleges that Meissner improperly disclosed trade secrets to Moov, and that this was a breach of his fiduciary duty. The alleged conduct falls squarely within the definitions provided by TUTSA. Regardless of whether CAE characterizes it as a common law civil claim, TUTSA categorizes the breach of fiduciary duty in this context as a trade secrets violation.

CAE's fraudulent inducement claim also fails because TUTSA's definition of "misappropriation" expressly includes improper taking. (Pls.' Resp., Dkt. 38, at 18). The law defines misappropriation as (1) "disclosure or use of a trade secret of another without express or implied consent by a person who ... used improper means to acquire knowledge of the trade secret" or (2) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Tex. Civ. Prac. & Rem. Code § 134A.002(3). Under this definition, misappropriation includes disclosure of material improperly attained. CAE's false

9

inducement claim alleges precisely this—that Meissner improperly uploaded trade secrets and then disclosed them without consent. (Compl, Dkt. 1 at 25–31). The false representation, in other words, was one of the improper means Meissner used to obtain and disclose the trade secrets. Because TUTSA encompasses this conduct in its definition of "misappropriation," CAE's fraudulent inducement claim is preempted.[3]

### B. The Separation Agreement Release

Meissner also contends that the 2018 Separation Agreement prohibits all of CAE's claims.[4] Under Texas law, "[a] release that is valid on its face and has not been set aside is a complete bar to any later action based on matters covered by the release." *Phan v. Addison Spectrum, L.P.*, 244 S.W.3d 892, 895 (Tex. App.—Dallas 2008, no pet.); *see also Southmark Corp. v. F.D.I.C.*, 142 F.3d 1279 (5th Cir. 1998) (holding that a "broadly worded general release" is valid and enforceable); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) ("[A] release…is an absolute bar to any right of action on the released matter."); *Villareal v. Saenz*, No. 5-20-CV-00571-OLG-RBF, 2021 WL 1986831, at *5 (W.D. Tex. May 18, 2021) (dismissing claims barred by general release on 12(b)(6) motion).

However, the Separation Agreement does not expressly waive all claims without reservation. Instead, the Separation Agreement reserves CAE's right to sue for certain claims. In full, Section 3(b) of the Separation agreement states:

> "In consideration of the promises and agreements of Employee hereunder, the sufficiency of which the Company hereby acknowledges, the Company, for itself and the Company Entities, hereby releases, waivers and forever discharges Employee from any and all claims, demands, suits, rights or causes of action, at

---

[3] Meissner does not contend that TUTSA preempts CAE's breach of contract claim. TUTSA contains an exception to preemption for "contractual remedies, whether or not based upon misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(b)(1). Plainly, a claim for breach of contract qualifies as a contractual remedy and is not preempted by TUTSA.

[4] Because the Court finds that TUTSA preempts CAE's fiduciary duty and false inducement claims, it need not address whether they would be barred by the Separation Agreement.

> law or equity or otherwise, including but not limited to, claims, demands, suits, causes or rights of action related to breach of contract, claims arising under local, state or federal laws, and any and all rights to or claims for attorneys' fees or damages (including contract, compensatory, punitive, or liquidated damages), or equitable relief, which the Company Entities may ever have had, has now or may ever have had, from the beginning of time through the date on which the Company executes this Agreements, whether known or unknown, including without limitation all claims on account of or arising out of Employee's employment with the Company or any Company Entities or Employee's separation from such employment. Notwithstanding the foregoing, the Company and Company Entities expressly preserve, and do not release, any claims relating to or arising from Employee's willful or wanton misconduct, fraud, or criminal conduct."

(Mot. Dismiss, Dkt. 28 at 5).

The final line of the release—the "Savings Clause"—defeats Meissner's defense. CAE expressly reserved "claims relating to or arising from [Meissner's] willful or wanton misconduct." (*Id.*). In its complaint, CAE specifically alleges that Meissner's conduct was "willful and malicious," and it has stated facts that suggest Meissner's conduct was intentional. (Compl, Dkt. 1, at 33). CAE claims that Meissner uploaded thousands of proprietary CAE files onto his Google Drive so that Moov could gain access to CAE's market information. (Compl., Dkt. 1, at 14–16). CAE further alleges that Meissner used these trade secrets to siphon clients and compete with CAE. (*Id.*) Viewing these facts in favor of the Plaintiff, CAE has plausibly suggested Meissner's misconduct was willful. Accordingly, the Separation Agreement does not bar CAE from bringing trade secrets claims against Meissner.

For the same reason, the Separation Agreement does not bar the breach of contract claim. CAE alleges that at the time Meissner entered into the Separation Agreement, "he had already secretly uploaded confidential information and trade secrets to a personal cloud account." (Compl., Dkt. 1, at 27). According to the complaint, Meissner entered into three separate agreements that prohibited him from improperly disclosing confidential information. The 2012 agreement specifically prohibited Meissner from using the information to "solicit . . . any client." (*Id.*). In the

2014 agreement, Meissner promised to return proprietary materials to the company when his employment ended. CAE alleges that he breached these contracts with the intention of sharing information with Moov to gain a competitive advantage. (*Id.*). CAE has plausibly alleged that Meisser willfully breached his 2012, 2014, and 2018 agreements.

Even if the breach were not willful, the Separation Agreement would not bar the claims because of when the injury occurred. The Separation Agreement only bars claims that were available up to the date it was executed. (Mot. Dismiss, Dkt. 28 at 5). However, at least some of the relevant breach of contract claim arose after the parties executed the Separation Agreement. In Texas, the "legal injury rule" governs accrual of a breach of contract. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Boulle v. Boulle*, 160 S.W.3d 167, 174 (Tex.App.2005)). Under this rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). While CAE alleges that Meissner uploaded confidential documents before 2018, this did not in and of itself cause the legal injury. Instead, the legal injury arose when Meissner allegedly used those documents to win over CAE's clients and obtain a competitive advantage. (Compl., Dkt. 1, at 29–31). Because this injury occurred after the Separation Agreement, it was not barred by the release clause.

In addition, CAE alleges that Meissner breached the 2018 Separation Agreement—the very same contract that contains the release of claims. CAE could not have had claims against Meissner for a breach of contract that neither party had yet signed. CAE's claim for breach of contract is not barred by the Separation Agreement.

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Defendant's motion to dismiss, (Dkt. 28), is **GRANTED** in part and **DENIED** in part. Specifically, Defendant's motion to dismiss counts four and five—Fraud in the Inducement and Breach of Fiduciary Duty—are granted. Defendant's motion to dismiss counts one, two, and three—Defend Trade Secrets Act, Texas Uniform Trade Secrets Act, and Breach of Contract—are denied.

**SIGNED** on September 26, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE