IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAE INTEGRATED, LLC and CAPITAL ASSET EXCHANGE AND TRADING, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:21-CV-377-RP |
| MOOV TECHNOLOGIES INC., | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Moov Technologies Inc.'s ("Moov") corrected motion for attorneys' fees. (Dkt. 173). Plaintiffs CAE Integrated, LLC and Capital Asset Exchange and Trading, LLC (together, "CAE") filed a response, (Dkt. 180), and Moov filed a reply, (Dkt. 181). Having considered the parties' briefing, the record, and the relevant law, the Court will deny Moov's motion.

**I. BACKGROUND**

This case concerns the market for used semiconductor manufacturing equipment.[1] Semiconductor manufacturing relies on proprietary processes that make use of highly specialized equipment. Because of the degree of specialization, the resale market for this equipment is quite limited and illiquid. (Mot. Prelim. Inj., Dkt. 100, at 7). A used equipment market does exist, however, and is largely built around intermediaries. The market as a whole is opaque, and buyers and sellers often prefer to keep their identities concealed, turning to the intermediaries to conduct their sales. (*Id.*). CAE is one such intermediary, matching buyers and sellers to facilitate equipment sales. Its traders use its proprietary platform, relying on decades of experience compiling data on participants in the market. (*Id.* at 8). CAE claims that it holds two types of trade secrets related to its business: (1)

---

[1] The following facts are lifted from the Court's order on CAE's motion for a preliminary injunction—the first and only order from this Court addressing the merits of CAE's claims against Moov.

data about its clients and their equipment that is held in its database, and (2) the platform itself. (Compl., Dkt. 1, at 9–12).

     Moov is a competitor of CAE's founded in 2017 by two former CAE traders. (*Id.* at 12). CAE also brought suit against Defendant Nicholas Meissner, who is currently employed by Moov.[2] From 2008 to 2018, Meissner worked as a trader at CAE. (*Id.* at 9). In 2012 and 2014, he signed confidentiality and nondisclosure agreements with CAE, agreeing not to disclose or duplicate the company's proprietary information. (*Id.*). During his tenure at CAE, he developed a wealth of knowledge about the industry and relationships with a number of customers. (*Id.*). Meissner was fired by CAE in May 2018. In July of that year, he signed a separation agreement that included one-year noncompete and nonsolicitation terms, as well as a release of claims against Meissner by CAE. (*Id.* at 11–12). Following the expiration of his noncompete agreement, Meissner was hired by Moov in June 2019.

     At issue in this action are thousands of CAE documents saved to Meissner's personal Google Drive account. During his time at CAE, Meissner's files were set to sync automatically to his personal Google Drive account, (*id.* at 11), which he routinely used to transmit photographs and other large files for business purposes. Until 2016, Meissner had a MacBook laptop which he used for both personal and business matters. That year, the company switched over to PC computers for all employees. (Mot. Prelim. Inj., Dkt. 100, at 10). Meissner retained his MacBook for personal use but, when it stopped working, turned it over to CAE hoping to have it repaired. CAE has retained possession of the laptop since 2016. (Prelim. Inj. Hr'g, Dkts. 115–16).

     Moov began to experience rapid growth around 2019, and by 2020 had attracted significant investments. At that time, CAE engaged in an investigation of Meissner's laptop, which it had

---

[2] CAE and Meissner filed a stipulation of dismissal on March 8, 2023. Meissner is not a party to Moov's motion for attorneys' fees.

retained since 2016. During this review, CAE discovered that Meissner had been syncing its documents to his Google Drive, and it found thousands of CAE's files from his time at CAE saved to his personal cloud account. CAE claims these files constitute its proprietary information and trade secrets. The files include purchase orders and invoices for sales to customers, as well as information on contacts at those companies, their specific equipment needs, and pricing history. They also include photographs of equipment and information on various products. CAE claims that Meissner brought the information contained on the Google Drive to Moov when he began working there, and that he used it to build Moov's customer base and compete with CAE in the market.

    CAE filed suit against Moov and Meissner on April 29, 2021. (Compl., Dkt. 1). It raised five claims: (1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (2) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code §§ 134A *et seq.*; (3) breach of contract under Texas and California common law against Meissner alone, in reference to the 2012 and 2014 nondisclosure agreements and 2018 separation agreement he signed with CAE; (4) fraud in the inducement under Texas Common Law against Meissner, alleging that he made misrepresentations regarding his possession of CAE files on his personal Google Drive account when he entered the 2014 and 2018 agreements; and (5) breach of fiduciary duty by Meissner alone for his conduct while an employee and member of CAE. (Compl., Dkt. 1, at 21-31).

    In the course of litigation, Meissner turned over access to his Google Drive to a third-party expert. He no longer has access to the cloud service, nor does Moov. (Counsel Email, Defs.' Ex. 163). Following extensive disputes regarding discovery, CAE filed a Motion for Preliminary Injunction on November 1, 2021. (Mot. Prelim. Inj., Dkt. 100). Moov and Meissner filed their Responses on November 8 and November 10, respectively. (Moov Resp. & Meissner Resp., Dkts.

105 & 107). CAE filed its Reply on November 12. (Reply, Dkt. 110). On November 15 and 16, 2021, the Court held a hearing on the Motion. (Prelim. Inj. Hr'g, Dkts. 115–16).

On December 22, 2021, the Court issued an order denying CAE's motion for a preliminary injunction because CAE had failed to show a likelihood of success on the merits. (Order, Dkt. 125). In its order, the Court found Meissner "credible in his testimony" that Moov was a small company using "unremarkable means to establish itself in a market and compete with an existing player." (*Id.* at 5). The Court further noted that Moov's use of customer identities likely did not constitute trade secrets under the Texas Uniform Trade Secrets Act, and that Moov's contacts with former clients of CAE were unremarkable, given the interrelated nature of the semiconductor market. (*Id.* at 6–9).

CAE appealed the order to the Fifth Circuit on January 10, 2022. (Notice of Appeal, Dkt. 128). On August 9, 2022, the Fifth Circuit affirmed this Court's decision, finding that the evidence CAE introduced at the preliminary injunction hearing was "insufficient to support a finding that [Meissner] misappropriated trade secrets." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 263 (5th Cir. 2022). The Fifth Circuit in particular emphasized the forensic analysis done on Meissner's Google Drive account, which had shown that he deleted the relevant CAE files before joining Moov. *Id.* at 260–61. Finally, the Fifth Circuit held that, even if CAE could show misappropriation, it had failed to demonstrate the use or potential use of trade secrets in the future, and therefore was not entitled to an injunction. *Id.* at 263–64.

Following the Fifth Circuit's opinion, the parties conducted discovery, but no further substantive motions were filed by Moov or CAE. On March 8, 2023, CAE moved to dismiss its claims against Moov with prejudice, which the Court granted on March 23. (Mot., Dkt. 165; Order, Dkt. 169). On April 21, 2023, Moov filed the instant motion for attorneys' fees. (Mot., Dkt. 180). In its motion, Moov argues that it is entitled to recover the attorneys' fees spent litigating this suit because it is the prevailing party, having obtained a dismissal with prejudice. (*Id.* at 12). Moov further

4

contends that the suit was "objectively specious" and brought in subjective bad faith because there was a complete lack of evidence supporting the notion that Moov had misappropriated trade secrets. (*Id.* at 13–15). CAE contests the motion, arguing that even though it did not succeed with the preliminary injunction, there was more than sufficient evidence to bring suit, and CAE had a good faith belief that Moov had indeed misappropriated trade secrets. (Pls.' Resp., Dkt. 180, at 8–25).

## II. LEGAL STANDARD

Moov seeks attorneys' fees under both TUTSA and the federal DTSA. TUTSA provides that this "court may award reasonable attorney's fees to the prevailing party if . . . a claim of [trade secret] misappropriation is made in bad faith." Tex. Civ. Prac. & Rem. Code Ann § 134A.005. The DTSA contains a materially identical fee provision. 18 U.S.C. § 1836(3)(D). A court may only award fees when (1) "the claim was entirely baseless or specious" and (2) "the claim was taken in subjective bad faith or for other improper purposes." *Stockade Companies, LLC v. Kelly Rest. Grp., LLC*, 2018 WL 3018177, at *6 (W.D. Tex. June 15, 2018); *see also Stilwell Dev. Inc. v. Chen*, 1989 WL 418783, at *3 (C.D. Cal. Apr. 25, 1989) (stating same)).

## III. DISCUSSION

To obtain attorneys' fees, a party must show that (1) it is a prevailing party and (2) the claim of trade secret misappropriation was made in bad faith. Tex. Civ. Prac. & Rem. Code Ann. § 134A.005. Given its voluntary dismissal of claims, CAE does not seriously contest that Moov is the "prevailing party" for purposes of TUTSA's fee-shifting provision. Accordingly, the Court will focus its analysis on the second element.

Although TUTSA requires a party seeking attorneys' fees to show bad faith, the statute does not define the term and the Texas Supreme Court has yet to address the issue. *Stockade Companies, LLC v. Kelly Rest. Group, LLC*, No. A-17-CV-143 RP, 2018 WL 3018177, at *6 (W.D. Tex. June 15, 2018). Nor does the identical DTSA provision define "bad faith." *See, e.g., Source Prod. &*

*Equip. Co., Inc. v. Schehr*, No. CV 16-17528, 2020 WL 4785048, at *4 (E.D. La. Aug. 18, 2020). Instead, courts have traditionally employed the *Stilwell* test, which asks whether (1) "the claim was entirely baseless or specious" and (2) "the claim was taken in subjective bad faith or for other improper purposes." *Stockade*, 2018 WL 3018177, at *6 (citing *Stilwell*, 1989 WL 418783, at *3). The court in *Stilwell* defines "bad faith" as "at least reckless or grossly negligent, if not intentional and willful." *Stilwell*, 1989 WL 418783, at *3. Here, the Court finds that CAE had both an objectively and subjectively reasonable basis to bring suit. While Moov argues that other evidence is suggestive of bad faith, the Court finds that it is insufficient to overturn CAE's good faith showing.

### A. CAE Had a Reasonable Basis to Bring Suit in Good Faith

#### 1. No Objective Bad Faith

On the limited record before the Court, CAE has introduced sufficient evidence to suggest an objectively reasonable basis for believing that Moov had misappropriated trade secrets. Prior to 2019, Moov was a relatively small company founded by two former CAE employees, operating with less than $1 million in revenue. (Pls.' Resp., Dkt. 180, at 3). In 2019, shortly after his noncompete elapsed, Moov contacted Meissner and hired him as head of sales. (*Id.* at 4). After he joined Moov, the company began to experience rapid growth, developing a new platform that closely resembled CAE's. (*Id.* at 5). Then, in 2021, CAE noticed that Moov had 20,000 listings, a number that it had taken CAE decades to achieve. (*Id.*). And CAE became aware that Moov had started to hire many more former CAE employees. (*Id.*). Moov also switched from Salesforce software to a custom platform that more closely resembled CAE's own platform. (*Id.*). And CAE learned that Meissner had been contacting former CAE customers, soliciting them on Moov's behalf. (*Id.* at 6). Prior to filing suit, CAE hired a forensic investigator, who reviewed Meissner's computer and determined that he had maintained large volumes of data from CAE and could, presumably, still access them at Moov. (*Id.*).

6

This evidence easily suggests that CAE had a reasonable basis to believe Moov was engaging in trade secret misappropriation. Its former employees had formed a new company that had experienced unprecedent growth shortly after hiring another former CAE employee who was found to have uploaded large amounts of confidential company information on his personal Google Drive account. Those facts alone likely warrant a denial of Moov's motion for attorneys' fees. To borrow language from the *Twombly* standard: misappropriation of trade secrets was a plausible inference from the properly alleged facts. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). Regardless of facts that came to light after the suit commenced, CAE had ample basis to file suit for trade secret misappropriation in good faith.

Moov emphasizes the forensic analysis of Meissner's Google Drive and the undisputed evidence that he deleted CAE documents from the Drive prior to starting at Moov. (Def.'s Reply, Dkt. 181, at 1). But the focus on Meissner's Google Drive account misses one key point—Meissner still could have misappropriated files after he deleted them from his Google Drive folders. CAE's forensic analysis of the laptop did not rule out the possibility that Meissner had transferred the confidential files or saved them elsewhere. (Pls.' Resp., Dkt. 180, at 12 n.12). The analysis only confirmed that Meissner had deleted the relevant files from Google Drive and then stopped accessing those folders. (*Id.*). Ultimately, because the Court found Meissner credible in his testimony, it did not infer that Meissner had moved his files off Google Drive. But that inference was a distinct possibility at the time CAE filed suit, and the Court's credibility determination could not have been made until after the suit commenced. Had the Court found Meissner untrustworthy, then the Court may have drawn this inference against Moov and found it likely that he had used those documents to misappropriate evidence.

This discussion of Meissner's Google Drive is not to re-litigate the merits of this case, but to note that CAE's case hinged on evidentiary findings that could only be made after filing suit.

Because CAE's forensic analysis was conducted pre-discovery, it could reasonably suspect that discovery requests could uncover further or more direct evidence misappropriation. And it was plausible that this evidence would be combined with a finding that Meissner was not a credible witness. Ultimately, CAE found little further evidence, and the Court did believe Meissner to be credible at the preliminary injunction hearing. (Order, Dkt. 125, at 5). Because these crucial findings could not be made until after the case commenced, it was not bad faith for CAE to bring suit.

Moreover, CAE showed that Meissner had taken a lengthy list of customer identities, and that Moov had begun to attract many former CAE clients. (*See, e.g.*, Order, Dkt. 125, at 8 ("But CAE has failed to establish that Defendants accessed or used any information beyond the identities of CAE contacts."). CAE connected these dots and assumed that Meissner had used his customer lists to attract former CAE clients. The Court ultimately determined that, in the context of CAE's motion, the customer identities did not qualify as trade secrets, which the Fifth Circuit affirmed. (*Id.*); *CAE Integrated*, 44 F.4th at 263. But this legal decision could not have been known to CAE at the time, both because it had not yet conducted discovery and because the legal status of CAE's customer identities as trade secrets was only determined by this Court after the suit began. As CAE argued in the preliminary injunction, customer identities often *do* constitute trade secrets. *See Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 569 (S.D. Tex. 2014) (granting preliminary injunction where customer identities were among many types of data misappropriated); *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 473-474 (N.D. Cal. 2020) (same); *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 WL 2361047, at *3 (E.D. Va. June 4, 2019) (same). Had its customer identities qualified as trade secrets, CAE likely would have succeeded on a core part of its claim against Moov. CAE's case does not become specious simply because it did not prevail on a close legal argument.

2. No Subjective Bad Faith

Moov further argues that CAE brought—and continued to litigate—this case in subjective bad faith. To warrant attorneys' fees sanctions, "a trade secret claim must involve conduct more culpable than negligence; it must be 'at least reckless or grossly negligent, if not intentional and willful.'" *JLM*, 2004 WL 1858132, at *1 (quoting *Stllwell*); *see also Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, 2018 WL 6599180, at *2 (Tex. App.—Dallas Dec. 17, 2018, no pet.) (interpreting "bad faith" as requiring "the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose.").

First, Moov repeatedly emphasizes that CAE was unable to locate a misappropriated trade secret during the course of this litigation. (*E.g.*, Mot. Atty. Fees, Dkt. 173, at 22 ("Moov's counsel repeatedly asked CAE to identify any specific trade secrets it alleged were misappropriated, but CAE never managed to do so.")). But if CAE did show a misappropriated trade secret, then it would presumably have succeeded with the corresponding misappropriation of trade secrets claim. The argument that CAE cannot show a single misappropriated trade secret effectively restates that Moov is the prevailing party—it does not show that CAE brought the case in bad faith.

Moov next argues that CAE's case was specious because there was a "complete lack of evidence supporting essential elements of its trade secret theft claim." (*Id.* at 18). Under Texas law, misappropriation of trade secrets includes three elements: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *See, e.g.*, *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.—Fort Worth, 2005, no pet.) (internal citations omitted). Moov contends that a complaint is "objectively specious" if it "lacks proof as to one of its essential elements. (Def. Reply, Dkt. 181, at 4 (citing *AWP, Inc. v. Safe Zone Servs., LLC*, No. 3:19-CV-00734-CRS, 2022WL 2910023, at *3 (W.D. Ky. July 22, 2022)). CAE, meanwhile, cites

9

cases suggesting that a claim is made in good faith so long as it meets at least *one* element of trade secret misappropriation. (Pls.' Resp., Dkt. 180, at 15 (citing *Johnson Matthey Process Techs., Inc. v. G.W. Aru LLC*, 603 F. Supp. 3d 1374, 1381 (S.D. Ga. 2022) ("*JMPT*")).[3]

Regardless of the whether this Court uses the "all elements" or "one element" test, CAE's claim is not frivolous. CAE did have evidence that the first two elements of trade secret misappropriation were met—Meissner had uploaded confidential information to his personal Google Drive account in violation of company policy. As to the third element, the use of the trade secret would have been shown if the Court agreed that customer identities qualified as confidential information. At the very least, there was a significant factual dispute as to the first two elements, and a colorable legal argument as to the third.

Moov relies in particular on a case from the District of Hawaii which held that the "complete lack of evidence" on plaintiff's claims could support a finding of bad faith. *See Berry v. Hawaii Exp. Serv., Inc.*, No. 03-00385 SOMLEK, 2007 WL 689474, at *15 (D. Haw. Mar. 2, 2007), *aff'd sub nom. Berry v. Dillon*, 291 F. App'x 792 (9th Cir. 2008) (noting that lack of evidence could indicate subjective awareness of a meritless claim). But *Berry* is distinguishable on several grounds. First, Berry continued his case to trial, meaning that the parties had completed discovery and Berry had not voluntarily dismissed the case. *Id.* By contrast, CAE and Moov did not complete significant

---

[3] Both approaches oversimplify the inquiry. Whether evidence exists as to certain elements of a claim is probative, but not dispositive, of the bad-faith inquiry. Here, for example, the Court determined that customer identities did not qualify as protected trade secrets within the context of how Meisser had used them. (Order, Dkt. 125, at 6–9). Having decided that these identities were not trade secrets, CAE's customer identities claim could no longer meet any elements of misappropriation, all of which are contingent on the existence of customer identities as trade secrets. CAE's claim did not become specious simply because it lost a question of legal interpretation. And on the other hand, it would lead to absurd results to say that establishing any element of misappropriation establishes good faith. One element of misappropriation is the existence of trade secrets. *LAC*, 160 S.W.3d at 197. The mere existence of trade secrets alone, which nearly every company possesses, cannot render a claim in good faith. Under both these approaches, it would be absurd to treat evidence of misappropriation as dispositive of bad faith. In practice, it is the quality and character of the evidence as a whole, rather than as part of each element, that is most indicative of bad faith. *See, e.g., Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1261 (2002) (noting that a claim may be specious if it "without substance in reality") (citing *Stilwell*, 1989 WL 418783, at *9).

10

discovery apart from the preliminary injunction, and CAE dismissed the case before filing dispositive motions. Second, the court in *Berry* referenced the lack of evidence in particular relation to Berry's insistence on "argument" only, rather than evidence. In other words, it was bad faith of Berry to argue *at trial* that he had shown misappropriation when he had a complete absence of supporting evidence. *Id.* That is simply not analogous to the instant case, where both parties introduced substantial evidence at the preliminary injunction hearing, and the Court found that the evidence tipped in Moov's favor. (Order, Dkt. 125).

### B. Moov's Evidence of Bad Faith

CAE has shown a good faith basis for bringing suit against Moov. While Moov does introduce some evidence that could be potentially suggestive of an improper motive, it is insufficient to rebut CAE's showing of good faith.

First, Moov argues that CAE was "motivated by an anticompetitive desire to go to 'war' with Moov." (Mot. Atty Fees, Dkt. 173, at 17). In particular, Moov relies on an email from CAE's CEO, Ryan Jacob, stating that he was "all pissed off over moov" and that he would "go to war on the market and them." (Email, Dkt. 118-5, at 13). Moov states that CAE then "dusted off" Meissner's old laptop to conjure up a reason to sue Moov. (Mot. Atty Fees, Dkt. 173, at 17–18). Moov argues that these facts show CAE brought this suit in bad faith as part of an intentional attempt to wage war on a competitor. The problem with this argument is that these facts are also consistent with a genuine belief in trade secret misuse by a competitor. The CEO's "go to war" email could constitute evidence of bad faith, but it could also show a CEO who is irate because he sincerely believes a competitor has begun to steal trade secrets by hiring former employees. Likewise, CAE's forensic analysis of Meissner's laptop could show that CAE needed pretext to bring suit, but it is equally (if not more) consistent with a legitimate course of action by a company that increasingly suspects its former employee who is now working for a direct competitor has begun to disclose trade secrets.

11

Finally, Moov relies on one case from the Southern District of California, which it contends is highly similar to CAE's claim. (Mot. Atty Fees, Dkt. 173, at 16 (citing *Comput. Econs., Inc. v. Gartner Grp., Inc.*, No. 98-CV-0312 TW (CGA), 1999 WL 33178020, at *6 (S.D. Cal. Dec. 14, 1999))).[4] First, like many of the cases cited by both parties, *Computer Economics* was decided after summary judgment, on a complete factual record not present in this case. *Comput. Econs.*, 1999 WL 33178020. Second, the facts of *Computer Economics* are readily distinguishable, as the plaintiff in that case had sent one single "document" and given the defendant a tour of its headquarters. *Id.* at *1. Those were the apparent limits of the two parties' contact. *Id.* By contrast, the connection between CAE and Moov was far greater, with the latter hiring several of CAE's former employees and soliciting many of their former clients. Third, the court in *Computer Economics* focused not on the plaintiff's commencement of suit, but the fact that it "*maintained* a trade secret misappropriation claim in bad faith." *Id.* at *5 (emphasis in original) (quoting *Stilwell*, 1989 WL 418783). Again, in the instant case, CAE moved to voluntarily dismiss its case before summary judgment, which counsels heavily against the notion that it maintained this suit in bad faith.

As CAE notes, a more apt case comparison is *Sabre Industries, Inc. v. McLaurin*, 2023 WL 1415617 (W.D. La. Jan. 31, 2023), *appeal docketed*, No. 23-30122 (5th Cir. Mar. 3, 2023). In that case, the defendant moved for attorneys' fees under the DTSA when the plaintiff voluntarily dismissed

---

[4] As this case arises under both TUTSA and DTSA, the parties each cite a laundry list of cases from across the county in support of their position. But nearly every single case is non-binding, and, at any rate, decided after summary judgment or trial. *See, e.g.*, *Sun Media Sys., Inc. v. KDSM, LLC*, 587 F. Supp. 2d 1059 (S.D. Iowa 2008); *Berry*, 2007 WL 689474; *Source Prod. & Equip. Co. v. Schehr*, 2020 WL 4785048, at *2 (E.D. La. Aug. 18, 2020); *Teetex LLC v. Zeetex, LLC*, 2022 WL 2439176, at *7 (N.D. Cal. July 5, 2022); *Hill v. Best Med. Int'l, Inc.*, 2011 WL 6749036 (W.D. Pa. Dec. 22, 2011) (decided after summary judgment); *Cont. Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733 (D. Md. 2002) (same); *Joshua David Mellberg, LLC v. Will*, 2022 WL 16745852 (D. Ariz. Nov. 7, 2022) (same); *AWP, Inc. v. Safe Zone Servs., LLC*, 2022 WL 2910023 (W.D. Ky. July 22, 2022) (same); *SGS Acquisition Co. Ltd. v. Linsley*, 2023 WL 2681946 (D. Colo. Jan. 9, 2023) (decided after directed verdict); *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270 (2009) (decided after trial); *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848 (2012) (decided after plaintiff failed to oppose summary judgment). Among all these cases, the Court will focus its discussion on the two that are most relevant: *Computer Economics* and *Sabre Industries*.

the case after three years of litigation. *Id.* The district court held that there was "an appearance of impropriety on behalf of [plaintiff's former employee] and [the defendant] from the start." *Id.* at *6. The court noted that the employee had "downloaded information on jump drives of which he had no business even accessing" and that there was "every reason to suspect that [the defendant] was in cahoots with [the former employee] in attempting to gain [the plaintiff's] confidential information." *Id.* These facts are analogous to CAE's suit, where a former employee uploaded CAE files onto his personal cloud storage before moving to a competitor that soon started to solicit former clients and adopt a more similar business model.[5] The facts may be marginally different, but as it is most similar to the instant case, *Sabre Industries* counsels strongly against a finding of bad faith.

As this Court has previously held, "The fact that the District Court denied [Plaintiff's] Motion for a Preliminary Injunction with regard to its trade secret claim does not mean that the claim was brought in bad faith." *Stockade*, 2018 WL 3018177, at *7. Here, while CAE may not have succeeded on its motion for a preliminary injunction, it had more than sufficient evidence to file suit in good faith.

---

[5] Moov attempts to distinguish *Sabre Industries* by arguing that the employee had joined the company more recently, that the employee had violated his contractual obligations, downloaded information, and voluntarily dismissed the case. (Def.'s Reply, Dkt. 181, at 7). These are distinctions without a significant difference. A party does not litigate a trade secrets claim in bad faith simply because it waited months to pursue it. Second, CAE could not have known if Meissner violated company policy regarding confidential information, but it was a possibility that could have been uncovered in discovery. Third, whether Meissner had used his Google Drive for personal reasons does not influence whether it was a violation of company policy to do so, and more importantly, whether it meant he could still access those files after leaving CAE. Finally, CAE did voluntarily dismiss the case. (Mot., Dkt. 165). In fact, the plaintiff in *Sabre Industries* waited longer to dismiss the case than did CAE. *See Sabre Industries*, No. 5:19-cv-934-TAD-MLH, (W.D. La. filed July 19, 2019) (Mot. Dismiss, Dkt. 251) (dismissing trade secret misappropriation claims three years after litigation commenced).

## IV. CONCLUSION

For the reasons stated above, the Court **ORDERS** that Moov's Motion for Attorneys' Fees, (Dkt. 173), is **DENIED**.

**SIGNED** on June 12, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE